Good morning, Your Honors. May it please the Court, my name is Noah Blackman. I represent the three officers, Officers Miller, Suozo, and Tran, in this case, as well as the City of Hayward. I'd like to reserve three minutes for rebuttal, please. Justice Holmes, in 1921, Supreme Court Justice said, Detached reflection cannot be demanded in the presence of an uplifted knife. In this case, the knife was Mr. Smith using his vehicle, essentially, as a deadly weapon towards officers. What makes this case all so different, Your Honors, is that it was potential that anybody in this vehicle could have had a firearm, and, in fact, a firearm was found after the fact. That makes it different than many of the cases cited by the appellees in this case, as well as Judge Gonzales-Rogers, who leaned on the Orn case. So, we know it's undisputed there were several violent crimes, including armed home invasion robbery, that led to this detention. The officers attempted this vehicle containment technique, and we know that Mr. Smith tried to flee. It's conceded and admitted by plaintiff's counsel he tried to escape, including two different times. But when we view this incident like the court needs to do from the perspective of a reasonable officer, we know that the escape was entirely reckless and dangerous. We have several officers in and around their vehicles, etc., etc. We know there was actually actual threat because two of the officers suffered injuries. Officer Suozo was admitted to the hospital. But the standard is not whether there was an actual threat in this case. As we know from the Sabi case, the issue is whether the Hayward Police Department officers could reasonably have believed that he posed such a threat. So, it's actually a lesser standard. And also, we're talking about probable cause. Officers can use deadly force when there's probable cause, essentially a fair probability to believe that this gentleman, Mr. Smith, posed a risk of serious danger or death to these officers. So, counsel, because of the unique procedural posture of this case, we can't redo summary judgment here. So, we're on this unique thing where summary judgment was denied. And the reason why we have jurisdiction is because you're arguing the officers were entitled to qualified immunity as a matter of law. So, at this stage, we have to take the facts as the plaintiffs would portray them and then analyze those facts to see whether or not the case law put your clients on notice that they would be committing a Fourth Amendment violation. So, they're going to say, which is why I'm asking you now so you have a chance to respond, they're going to say, look, under our versions of the facts, the car was not threatening the officers. And cases like Oren say if the car is not threatening the officers, they can't use deadly force. And they're going to say that's the end of this case. At this stage, now, maybe you go to trial and it's a whole different thing happens. But let's assume they're right that that's our analysis we have to do right now. What's your response to that? Well, first of all, Your Honor, yes, this is a lead. We're making legal arguments here. And the court, just like the district court did, the district court ruled substantively, obviously, on the qualified immunity issue, just like Your Honors can do. So, when you we're talking about legal issues here, we're talking about the court looking at essentially you can look at the video evidence, the animation evidence. The plaintiffs or the appellees, they did not object to the animation evidence as part of the motion for summary judgment. And it's very consistent with the video. That's why there's animations that are some of the exhibits in the record. There's actually the videos composed with the animation so the court can see all that. But, Your Honor, it's undisputed he was a threat. And here's why. We can see that the Volvo was – okay, first of all, let's back up because we're not talking about just analyzing the final six seconds of this. We're talking about all these facts that led up to this detention, danger, serious crime. I agree with all that. You're absolutely right. You can't look at it just at that split second. But, again, because we have this odd procedural posture, we can't just redo summary judgment. And so we have to say our analysis is, okay, for us to even have jurisdiction in this case, we have to conclude that under the plaintiff's versions of the facts that there was – the officers were on notice or there wasn't a constitutional violation even under their version of the facts. Now, their version of the facts are the officers were not in danger by this vehicle. So what do we do in this situation? Well, their version of facts, Your Honor, respectfully, has to be based on evidence in the record. And so it has to be based on essentially some factual recitation from evidence, declaration, or looking at the video. So we know that from Scott v. Harris that reasonable inferences can't be considered but only as supported by the record. So I think the video – I'm going to give a little more clarity on what we can look at from it. But I agree we can look at the video. Scott v. Harris tells us that. So when we look at the video, what is it in the video that makes it so clear that their version of the facts is wrong? Essentially, this incident is essentially undisputed when you look at the video evidence. And here's why. We know the vehicle when it was first attempted to be contained or boxed in essentially that the first officer, Tran, he's got his emergency lights on. That's undisputed. He comes up. He tries to pin it in. The vehicle tries to escape at that point, hits both vehicles essentially, stops. Then the vehicle backs up. So now we're at sort of the tail end of this incident. So there's many different options for Mr. Smith at this point. He could put his hands up like the officers are ordering. He could put the car in drive. He can turn the vehicle off. If he wanted to escape without threatening the officers, could easily open the driver's side door and ran on foot. He doesn't do any of those things. He backs up about 12 feet, almost hitting the motel. So now he has more room essentially to threaten the officers if that's what he wants to do, and that's exactly what he does. We can hear the acceleration. He starts coming forward. There's no dispute in the record, and I can point out specifically to Your Honors, he starts coming forward, and then the officers have to fire because we have Officer Suozo who's in the middle. He basically is directly at threat. We have Officer Tran who's in the driver's side of the vehicle to the right. So your point is that it's undisputed that he started accelerating before the officers fired? That's correct, Your Honor. And I think that's consistent with what the district court found, right? That is, I believe, consistent with what the district court found. But the plaintiffs, again, without evidence, they argue that the shots come after he or, excuse me, the shots come before he starts going forward. We did provide Exhibit M6, which is one of our exhibits, digital. But the district court says as the Volvo accelerated, the officers opened fire, shooting seven times. So to me, that reads that he accelerated and then they shot.  And I agree that's exactly what we see in the record. The reason I'm pointing this out, the bottom left-hand corner, which their expert does not provide in their matrix, you can see the back of the vehicle close, and then you see the vehicle going forward, and then you hear the shots. So now we have an individual who may be armed, other individuals may be armed, and now he's moving this vehicle forward, accelerating in close proximity to officers on foot. If I could just jump in just to help me remember. So you have, there's an officer who fires that kind of the final shot. Yes, Officer Miller. Miller, okay. I just want to make sure I know who the member is. So we have a 28.6-second incident, essentially, right? We know that. It's undisputed. When the vehicle starts coming forward is the last 6.6 seconds. Officers are trying to analyze quickly in milliseconds what's happening, why is this vehicle coming forward, are there other officers in danger, and then we have the 3.1 seconds of gunfire, which stops the vehicle, incapacitates the driver. Now, we know that the courts are not supposed to be, you know, analyzing and scrutinizing an officer's every minor move in a frantic and chaotic situation as if we're examining the Zebruder film. That's from this court in the Hyde case. So, and we also know recently from the Supreme Court, Justice Kavanaugh's concurring opinion in the Barnes case, the great dangers involving traffic stops here. I think when the court looks at the key cases, not only is it not clearly established that these officers, you know, did not violate constitutional law, but in fact, the cases say that what they did was totally lawful in this kind of a situation. The Plumhoff case from the Supreme Court, it's definitely not directly on point, but some of the key tenets from that. But one of the Supreme Court cases that is on point, the Brasseau case from 2004, where we have a vehicle that's just starting to flee. The officer's afraid it's going to run into some other officers on foot. There's also a couple citizens in some occupied cars. That was deemed under the second prong to be not in violation of clearly established law. I think there's several other cases that are very close to this case. The Wilkinson case and the Monzon case, both from this court. Wilkinson was very close to our fact pattern, where we have this vehicle after it gets sort of stuck in the mud, an officer falls down. The other officer believes that officer could be injured or in harm's way as the vehicle's now trying to get out of there. And even though the car's not significantly moving at that point, the court said, this court said, the car could have gained traction at any time, resulting in sudden acceleration in speed. We have similar issues in the Monzon case, where the court found it was lawful and under the second prong as well, did not violate clearly established law. And in that case, there was even a longer time period. There was about two minutes after this vehicle made its turn, the officers were on foot. There was also four or five volleys in those last few minutes that led to this individual being, I believe, killed. So officers in the Monzon case had a lot more time to figure out what they could do. Can they get out of the way? The court said that that shooting was lawful under both the first prong, under the Fourth Amendment, and or did not violate clearly established law. So I think those cases and then we recently have the Williams case, which I understand, you know, doesn't it's a 2024 case, but the key tenets from that case as well, another situation where we have a dangerously driven vehicle in close proximity to officers. Again, it's reasonable that an officer, without the benefit of hindsight, might fear that Williams' truck would gain traction at any moment. In our case here, it's undisputed that the officers not only start firing when the vehicle starts coming forward, but really the gunshots essentially incapacitate the driver, which leads to the vehicle stopping. And why that's important is we don't know what would have happened if these officers missed or didn't incapacitate the driver or did not fire. What we know from the record here is that that vehicle, Mr. Smith's Volvo, impacts the police vehicles, moves them back at least a foot each. And if he kept on accelerating, let's say the gunfire didn't happen, he would have likely pushed the vehicles apart. He only needed another six inches and he was now driving between the vehicles where essentially Officer Suoza was and Officer Tran was nearby in his doorway there. So I know I'm pressed for time. I feel strongly that I can distinguish the cases that the plaintiff leans on, the district court leaned on Oren, that's highly distinguishable, and I could talk about that in my rebuttal. Very good. We'll reserve. Give him two and a half for rebuttal. Thank you, counsel. Thank you. Good morning. May it please the court. Pat Bloma for the Plaintiff Appellee. What cannot be lost on this case is that it's been held for decades now that officers can't fire into a car just because it's slowly moving if it's not a threat. And that's what we saw in Oren. We saw that all the way back in Acosta and Villanueva. And what counsel is failing to address here is that we don't even know what the officers actually believe at summary judgment. They refused to testify at deposition. The court held that... Isn't it an objective inquiry, so it doesn't matter? Well, I think it adds facts or could substitute facts. If the defendants or appellants are relying on those facts about what the officers testify, then it does matter if that's what the courts can consider. But if we all agree that their statements can't be used because it's an objective inquiry, then all we have is the video. And what we see on the facts were kind of misstated here. One officer comes, tries to pin in the car. He leaves open a space, even though he was supposed to wait for his fellow officer. I'm sorry. Sorry. Are we seeing the video? Are we allowed to take in the animation video? Are you denying? Are you objecting to the use of that in the summary judgment? Not to the animation in itself, but the conclusions that were drawn from it, I do object to. And this is why, Your Honor. It's because it said there was six feet of space left before the car could get out. But there was no methodology or explanation why that's true. No velocity of the car. No consider... Even though the weights of the cars were provided, which the two SUVs were twice the weight of the Volvo, no explanation... Yeah, I know. I understand all that. That makes sense. Do you dispute, though, that the Volvo was accelerating before the officers fired? I do, Your Honor. Actually, if you look closely at the video, and we provided a video, which is the defense one, if you watch... If I could just go through the sequence real quick so that we're clear. So one car goes in, right? And it's important. So one car goes in, and that's Tran's car, to do the initial stop. He tries to go around, slows his car, comes, and he hits him. Then the reverse happens, and then Tran... This is important. Then Tran goes forward, closing the distance, right? Now, you can see... When Tran is driving, you can see him move his stick shift. At the very top is park. At the very... And then there's reverse and drive at the bottom, okay? Once he's blocked in, right? So he's reversed. Tran blocks him in. He puts it in park, and then he steps out and starts giving orders. Then he gets back in his car, and he puts it down to reverse. Maybe it's drive. Maybe it's reverse. It looks like reverse to me because his rear lights come on. And then he starts going backwards, and then the car starts moving forward. And that is when Officer Miller fires that first shot. Then after that first shot, you hear the engine rev, and it goes quicker. So if it's... But he's moving forward before the shot. Slowly. And this is... Okay, so you admit that he is moving forward before the first shot was fired. Yeah, and so... Okay. I mean, so to me then that's... I mean, to me that's the key, right? If he's accelerated, if he's moving forward, that's a threatening posture versus, you know, you're not. May I address that? Yeah. Okay, great. So Orin, in that same case in Orin, they talked about acceleration. They said the acceleration only came after... Yeah, but I mean, I think he was not in the line of sight in Orin. He was on the side of the car, right? Which is where all they were. They were all on the side. Okay. I mean, and I think the body cameras show that. It's like... Well, no, so one... Because when he accelerated, he hit the car. So it was his car, right? Which car? So Trant is sitting in his car, right? So he's not in danger, right? Well, I don't know. He drives by his car, right? And then we look at Miller. Miller's on the opposite side. And then Suloso even, let's say you think, oh, this car is a threat. So Suloso is at his A pillar. And then as he fires, he steps into the gap. If he thinks that there's some possibility... He's moving away from the car. Don't you agree? Sorry, sorry. Go ahead. If there's some possibility that car makes it through the gap, even if he's going backwards, you don't step into the gap running backwards. You can't outrun or out-backpedal a car. Why do you fire and step into the gap? That's insane. You're putting yourself... I've never seen any pedestrian do that. See a car coming and step in front of it. That's a... I mean, another interpretation, he's getting out of the way of the car because it's hitting him. The car is accelerating towards him. The door almost hits him, I think. So that would be an interpretation you'd have to take in my favor. I'm not taking that interpretation. To me, the key point is you agree that the car was moving forward before the shot was fired. I agree because one might think it's because the officer, Tran, he reverses, letting the suspect out. And as the suspect drives in concordance with that, one officer inexplicably shot into the car. So if I could ask about the shots because, I mean, again, I'm not trying this case. You're going to be, hopefully, if we agree with you, you would be trying this case. But there are three officers involved. And two of the officer's shots, to me, seem a lot more understandable than the third. There's a third last shot. Is that by Officer Miller? That's by Officer Miller, who was the one that shot first, and he's the one that shot after the engine stops and fires.  So it seems to me that, and again, I'm just making sure. It seems to me we have different, there are multiple defendants in this case. And it seems to me that the case against Miller is, in some respects, different than the case against Tran and Suozo. Because, I mean, they're going to say, look, the other shots, the car was moving and all that. But for your case, the shot that Miller took at the very, very end when the car is, there's a, the car stopped, there's a beat. Then he steps outside that door and shoots again. So in your case, is your theory that, again, we haven't talked about this case. But if for some reason there's no case against Tran and Suozo, I assume you think the Miller shooting is different, that last shot. I would say it's absolutely different because all the two other officers stopped firing. You can hear the engine and accelerator stop, the car stop, and then he seems to regain his balance and then looks over the top of the hood and assesses, which they were required to do, and then takes a shot. So I think his case, and I also think that his initial shot is incorrect too. None of the other officers fire. He fires when the car is moving slowly. And so I think that is a different, I think it's different in kind than the other two officers. I just still think that Officer Tran. No, I understand. I'm not asking you to concede anything. But as we're analyzing this case, it seems to me there's the whole question of was the car accelerating, not accelerating. That applies to that analysis. Regardless of who wins, I don't see that applying to the last shot that Miller took. Agreed. It's an undisputed fact because it's on the video that the engine has stopped, the car has stopped. There's, as Your Honor described, a beep, and then you hear this pop. And that to me is a clear amount of time that Officer Miller could have or did assess and reassess, not taking into account his statement, which was very different, I would just note, than what occurred. He said the car struck his car four times. That absolutely did not happen. So, I mean, he's just a different officer in some respects. Can I ask your theory of why you think the car accelerated after the shots were fired? Because if you, so after the first shot is fired. So if you watch closely the synchronization and the movement of Tran going into shifting his gear shift, you can see the white smoke from Miller's as that car is starting to move. And then you hear the loud, like, whoosh, right after that white smoke goes. So is your theory that he was shot and it was an involuntary reaction or something? No, I think Miller shot. That freaked out the driver, as you can imagine, and then he jammed the pedal. I see. So I think it's a reasonable interpretation of that sequence of events that a jury could decide one way or another on. And going back to some of the case law, I think that is often brought up in these driving cases that I think the counsel cited against us. I would just note that the sequence of events that occurred prior in, let's say, for example, Scott v. Harris, Monzon and Wilkinson, all of those in Plumhoff II, all of those involved high-speed chases before the shots fired. So, for example, in— Why is that relevant? The reason why it's relevant is because this court repeatedly has said, and I'll just quote, to warrant the use of deadly force, a motorist's prior interactions with police must have demonstrated that he was either willing to injure an officer that got in the way of escape or is willing to persist in extremely reckless behavior that threatened the lives of those around. And here, if you're driving, for example, through congested streets in L.A. and nearly hitting pedestrians, it shows it's a danger to other people. But, you know, he was engaged in armed robbery, right? We have no—first of all, they don't even have an actual suspect. They just think that this Volvo could be involved. They don't know if the— Right. And just notably, if you watch the video, one of the quote-unquote suspects is standing next to the car. They just let that suspect walk away. Like they're getting into the car. The car pulls up to detain them, and they cop out. There's—not everyone's got in the car. That one suspect that apparently could be armed, they just let them walk away during the detention. So they had—they just knew that that car was involved. They didn't know who was in any of those crimes. But they reasonably felt that it's possible he could be armed because he's engaged in armed robberies before. Well, no, they don't know who that is. The person—the car was engaged. They don't know what suspect's in there. Any car stop could be armed. I mean— True. It doesn't mean you get to pull out your gun and pull over everybody making a wrong left turn. Right. I mean there are a lot of things in hindsight that— I mean the police, they could use strike strips and put them in front of the tires so the car— there's all kinds of things that could be done. And hopefully Oakland and Alameda County law enforcement can watch this and see that if you want to mobilize a car, there are ways other than boxing it in. But for our purposes today, we're just focusing really on the shooting. I don't think we can take into—the officers could have laid a strike strip or something like that. We're just—we— Agreed. We would have, could have, should have. But for our case, it's really about at this stage, does the video so objectively show that your version of the fact is wrong? I mean really that's what our case—what we're doing today, isn't it? Absolutely. And also I think if you just look, you see the car is absolutely blocked in. I mean he—the highest speed he ever gets to is when he initially tries to get away, and Suoza's car blocks him and he doesn't manage to go any further. The only reason that the trans car moves at all is because he puts it in reverse and you can just watch the tape. That's the only reason it moves. So basically the facts that we have are as a car is boxed in by two cars that are twice its weight, and one officer shoots it while the other officer seems to be letting that car out or giving it room. I'm not sure what, because he refused to testify. So—and I would just note for the court that the Fifth Amendment basis for which they weren't testifying is not over. So they are—they presumably would now be able to testify or were willing to testify. So we should be able to depose these officers. So you're saying it's over is—what do you mean by that? Sorry. The reason why, the underlying reason why these officers refused to testify was because they said the DA had reopened an investigation into whether or not they committed— Because they have a new DA and— Yeah. Then the new DA—now the new DA came in and said, hey, we're affirming the prior DA's resolution of that. So now presumably the reason why all the officers did not testify could now testify making moot— Because Ms. Price is no longer the DA. Correct. And now we have a new DA. Forgive me. I forget the name. That's all right. I understand. Politics is interesting in that part of the Bay. Every day. So if the justices don't have any further questions— All right. Thank you, counsel. A few final points, Your Honors. Number one, Kelly's counsel is totally misrepresenting this reverse lights issue. We put that in our papers. He freeze-framed a picture of a trans vehicle, and actually it's the emergency lights flashing. And you see that. If you look at the video, you can see trans cars actually reverses afterwards. And so that is totally a misrepresentation. He does concede that the car is moving forward at the time of the gunshots. When you look at these other cases, especially the Orn case, Orn, this gentleman driving without his headlights, he's actually fleeing at a slow speed, stopping at traffic lights, stopping at stop signs. All the evidence shows—and there's no video in that one either— but all the evidence showed he was trying to drive away from officers. And when he hit an officer's car, it was slight and accidental. Also, the key factual dispute on Orn was that his vehicle revved and accelerated only after the first shots fired, different than with Mr. Smith here, who accelerated before the gunshots. Also, we have the threat of a firearm issue in our case. That's not in any other case, and that's a real threat. And we did have the firearm found in the vehicle, and that's in the record. That was in the front passenger seat floor. So Orn cannot stand as clearly established law. The Acosta case, the Acosta case is totally different. That case went to trial. And the evidence showed the officers could have stepped aside on that slow-moving, purse-snatching incident. There's no video in that one. Judge Gould was involved in the Gonzalez case. Totally different. That's when this officer was trapped inside of the vehicle. That cannot stand for clearly established law. Villanueva was different. Another case that's easily distinguished. This gentleman turns in his vehicle. It's not a reckless turn. Doesn't crash into any other car. Actually, in that case, the court confirmed that deadly force against stopped or slowly moving vehicles reasonable when the driver's trying to evade arrest in an aggressive manner involving attempted or actual acceleration, all of which we have here. The final issue, Your Honor, that you raised is Officer Miller's last shot. If you look at the evidence, that shot comes 1.2 seconds after the shot before, which was Suozo's last shot. And if you look at the videos, the reason it takes little time for him to make that last shot is he gets hit by the door on the driver's side from the impact of Mr. Smith, so he's no longer in the doorway, V, so he has to go around the car, get around the closed window of the police car, and then he makes his final shot. And, yes, the Smith vehicle may have been stopped momentarily at that point, but we're talking about milliseconds. And the final point, and, Judge Bumatang, you say this in your dissent in the State of Hernandez case, that, you know, we can't ignore that this stuff happens in real life. This is not slow motion, and we can't really deny qualified immunity when we're breaking down these things into milliseconds. So I think the court has a real opportunity here to rule on the first prong, finding that this is lawful to provide guidance towards officers at a minimum, qualified immunity in the second prong for breathing room for officers in similar situations. Thank you very much. All right, thank you, counsel. Thanks to all three of you, I'll say, for your briefing and argument today. Much appreciated. This case is submitted, and this particular panel is done. Judge Bumatang and I will be back tomorrow at 9 o'clock. Thank you.
judges: GOULD, OWENS, BUMATAY